IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CECIL MOORE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 7:20-cv-00164 |
| | ) | |
| MCMURRY, | ) | By: Elizabeth K. Dillon |
|     Defendant. | ) | United States District Judge |

## MEMORANDUM OPINION

Plaintiff Cecil Moore is an inmate formerly in the custody of the Southwest Virginia Regional Jail Authority ("SWVRJ").[1] Proceeding pro se, Moore filed this lawsuit pursuant to 42 U.S.C. § 1983, naming as defendant McMurry,[2] a correctional officer at SWVRJ. The court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and determined that Moore's initial complaint was subject to dismissal as pled. The court granted Moore an opportunity to amend his complaint. Moore's amended complaint alleges a claim of excessive use of force against McMurry.

Pending before the court is McMurry's motion for summary judgment. McMurry argues that Moore failed to exhaust any relevant grievance before filing this lawsuit. Because Moore has failed to produce any significantly probative evidence demonstrating that he exhausted a relevant grievance, or that he was unable to do so through no fault of his own, the court will grant McMurry's motion for summary judgment and dismiss Moore's claims with prejudice.

---

[1] Moore is currently housed at the Federal Medical Center in Lexington, Kentucky.

[2] McMurry's first name is Jason. The court will direct the Clerk to update the docket to state this defendant's full name: Jason McMurry.

1

## I. MOORE'S CLAIM AGAINST MCMURRY

McMurry and another, unnamed, correctional officer transported Moore from SWVRJ to a court hearing at the Lee County Circuit Court on October 3, 2018. Moore alleges that McMurry used excessive force while putting Moore into restraints for transport from the court back to the SWVRJ. Moore alleges that McMurry and the other correctional officer slammed Moore to the floor. Moore alleges that, while he was putting his hand on the floor to turn himself over, McMurry intentionally and maliciously used excessive force. Moore alleges that McMurry stomped on Moore's hand, thereby breaking Moore's hand. Moore alleges that McMurry ignored Moore's physically impaired condition.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 24-48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a

verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 377 U.S. at 249-40).

### III. DISCUSSION

**A. Exhaustion Under the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). "[E]xhaustion is mandatory under the PLRA and … unexhausted claims cannot be brought in court." *Id*. at 211.

The PLRA requires "proper exhaustion" of available remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding." *Id*. at 90-91. Thus, an inmate's failure to follow the required procedures of the prison's administrative remedy process, including time deadlines, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Id*. at 90. Notably, moreover, district courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 1174, ___, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable to consistently unwilling to provide any relief to aggrieved inmates;" (2) it is so opaque that it becomes, practically speaking, incapable of use;" or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process … the process that exists on paper becomes unavailable in reality.").

**B. Moore Did Not Timely Initiate Any Relevant Grievance, And A Tenuously-Related, Untimely Grievance Was Rejected For Vagueness**

McMurry has submitted the declaration of Jeannie Patrick, Lieutenant at SWVRJ. According to Patrick's declaration, the SWVJA has an inmate handbook which sets forth the process by which an inmate can file for administrative remedies. Inmates may grieve "any behavior or action directed toward an inmate by a facility employee or other inmates[.]" (Patrick Decl. ¶ 7 & Exhibit A-2, p. 9, Dkt. No. 26-1, p. 17.) Before initiating a grievance, the inmate must make an effort to informally resolve the issue, using forms available on the kiosk. (*Id.* ¶¶

4

9-10 & Exhibit A-2, p.28, Dkt. No. 26-1, p. 36.) The "kiosk" is defined in the Inmate Handbook as:

> Computer generated information system for inmate's [sic] to notify institutional personnel with concerns or complaints. Please direct your complaint(s) to the appropriate department for which you want a response from.

(*Id.* ¶ 14, Exhibit A-2, p. 10, Dkt. No. 26-1, p. 18.)

After making an effort to informally resolve the issue, the inmate initiates the grievance procedure by filing a grievance within seven days of the occurrence. (*Id.* ¶¶ 11-12 & Exhibit A-1, p. 28, Dkt. No. 26-1, p. 36.) If there is good reason for delay, the delay should not exceed 15 days.[3] (*Id.* ¶ 12.) The grievance is submitted on the kiosk, or with a grievance form if the kiosk is unavailable. (*Id.* ¶ 11.) The inmate receives a response within nine days, informing the inmate whether the grievance is valid. If the grievance is found to be valid, a written finding is returned with the response. Finally, an inmate who is dissatisfied with the response may appeal within seven days of receipt of the response. (*Id.* Exhibit A-2, p. 28, Dkt. No. 26-1, p. 36.) It is this final appeal that establishes administrative exhaustion. *See Woodford*, 548 U.S. at 90.

According to Patrick's records of Moore's kiosk use, Moore used the kiosk multiple times from about September 2018 through December 2018. (Patrick Decl. ¶ 16 & Exhibit A-3, Dkt. No. 26-1, pp. 39-46.) Moore's kiosk records are grouped according to topic area. Within the seven-day time frame for initiating a grievance regarding the alleged hand-stomping incident of October 3, 2018, Moore used the kiosk on three occasions. On October 4, 2018, Moore used the kiosk to ask to be moved. He was given a response the same day. On October 10, 2018, Moore used the kiosk to ask for copies of his X-ray, emails, and medical grievances. He

---

[3] The fifteen-day extension for good cause, that Patrick describes, is apparently an informal policy of the administrator as it is not set forth in the inmate handbook.

received response the following day.  Also, on October 10, 2018, Moore used the kiosk regarding a medical fee and, likewise, received response the following day.

Moore continued using the kiosk in the months of November and December 2018, initiating seven different requests on topics including a medical grievance, medical fees, a request for sheets and clothing, a request for copies of his money transactions, and a request to move another inmate.  Each of Moore's kiosk requests received response within a day.

Moore's kiosk records from October 3, 2018, through December 2018, do not contain any indication that he initiated the process of grieving McMurry's alleged excessive use of force in any timely manner.  Over nine months later, on July 27, 2019, Moore did submit a written grievance asking to talk to "the Major," and complaining that he had been assaulted three times with excessive force.  (Patrick Decl. ¶ 17 & Exhibit A-4, Dkt. No. 26-1, pp. 47-48.)  His grievance does not describe any of the three alleged assaults, but it continues in conclusory fashion to complain *inter alia* that his legal mail envelopes were taken, confidentiality was breached, he was deprived of basic needs, he was wrongfully strip searched, his due process rights were violated, and malpractice occurred.  In the space provided for him to explain what action he would like to have happen, Moore suggested "talk and see what we come up with."  The grievance was rejected on August 2, 2019, on grounds that it did not properly describe Moore's grieveable issue(s) because a talk with the Major was a request rather than a grievance and because the Major was not involved in the grievance process.

There are hints in this record that Moore may have required medical attention in October 2018.  For example, on October 10, 2018, Moore asked for a copy of his X-ray.  There is nothing, however, so specific as to support Moore's allegations that McMurry assaulted Moore and broke Moore's hand on October 3, 2018.  As of October 4, 4018, Moore's chief concern

6

appears to have been his request to be moved. This request demonstrates that Moore had access to the kiosk and could have initiated a grievance process regarding the alleged assault that had allegedly occurred the previous day. Moore accessed the kiosk again a week later, on October 10, which would have been the last day he could have timely initiated a grievance about the alleged October 3 assault. Yet, Moore did not initiate any relevant grievance until the tenuously-related, rejected grievance of July 27, 2019.

In unsworn response to the summary judgment motion, Moore contends that he did exhaust all administrative remedies and grievances. Moore states that he is impaired, and he asked various prison officials for help, including correctional officers, lieutenants, and sergeants. Moore also contradicts his own claim of exhaustion with his assertion that he did not have access to the kiosk from October 11, 2018, until December 8, 2018, because he was in the medical unit and the special housing unit due to his broken hand, and that correctional officers did not respond to his request for paper grievance forms.[4] Even if Moore's representations were accepted as true, Moore nevertheless made no effort to initiate a grievance until months later, in July 2019.

On this record, Moore has failed to demonstrate a genuine issue as to whether he exhausted a relevant grievance. Moore has not produced any significantly probative evidence that his failure to exhaust was the result of any action or inaction on the part of prison officials. Moore made use of the kiosk for other purposes during the 7seven days that he might have initiated a grievance about the alleged assault of October 3, 2018, yet he did not do so. Thus,

---

[4] Moore's response also recounts another incident on that allegedly occurred on November 23, 2018, while he was allegedly housed in the medical unit and special housing unit, in which other correctional officers (not McMurry) allegedly applied excessive force, choking him and bending his legs back. This separate incident is the subject of Moore's separate lawsuit. *See Moore v. Chandler*, 7:20-cv-166 (W.D. Va.).

Moore did not exhaust his available grievance remedies regarding the alleged assault of October 3, 2018.

Usually, the failure to exhaust under § 1997e(a) results in a dismissal without prejudice. *See, e.g.*, *Booth v. Churner*, 532 U.S. 731, 735 (2001). But when a plaintiff can no longer begin the exhaustion process because the time for filing a grievance has expired, dismissal with prejudice is appropriate. *See Harris v. Elam*, No. 7:17CV00147, 2020 WL 2079976, at *4 (W.D. Va. Apr. 30, 2020) (dismissing claims with prejudice upon a finding that the plaintiff could not begin the exhaustion process anew); *McCoy v. Williams*, No. 3:10CV349, 2011 WL 5153253, at *4 (E.D. Va. Oct. 28, 2011) (same). That is the case here, and this dismissal will be with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the court concludes that McMurry's motion for summary judgment will be granted and Moore's claims will be dismissed with prejudice for failure to exhaust his administrative remedies. An appropriate order will be entered.

Entered: September 21, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge